Mark Jaffe (CA SBN 315950)
Email: mark@torekeland.com
**TOR EKELAND LAW, PLLC**
2120 University Avenue #228
Berkley, CA 94704
Telephone: 415-770-0398

Tor Ekeland (*pro hac vice forthcoming*)
Email: tor@torekeland.com
**TOR EKELAND LAW, PLLC**
195 Montague Street,
Brooklyn, NY 11201
Telephone: (718) 737-7264

*Pro Bono Attorneys for Petitioner Keith Preston Gartenlaub*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| United States of America,<br><br>Plaintiff<br><br>v.<br><br>Keith Preston Gartenlaub,<br><br>Petitioner, | Case No.: 2:20-cv-03711<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION** |
|---|---|

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that in the United States District Court for the Central District of California, located at 255 E. Temple Street, Los Angeles, California 90012, Petitioner Keith Preston Gartenlaub ("Petitioner") hereby does, move this Court for an order:

      (1) Vacating his conviction, or in the alternative

      (2) Ordering a new trial; or

      (3) Vacating his lifetime probation

This Motion is based on this Notice, the attached declarations of Jeff Fischbach and Keith Preston Gartenlaub and the pleadings, files and other matters in the record and that may be presented at the hearing.

DATED:  April 22, 2020                **TOR EKELAND, PLLC**

                                    By: */s/ Mark Jaffe*

                                        Mark Jaffe
                                        Tor Ekeland

                                        *Pro Bono Attorneys for Petitioner*

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

# TABLE OF CONTENTS

Introduction .................................................................................................1

Procedural History.........................................................................................5

Background....................................................................................................5

The FBI Secretly Enters Gartenlaub's Home and Images His Hard Drives....................11

The Fed. R. Crim. P. 41 Warrants Based on the Fruits of the FISA Warrant....................12

Verdict .........................................................................................................15

The DOJ Inspector General FISA Application Investigation ..........................................16

Argument .....................................................................................................17

I.   This Court Should Vacate Petitioner's Conviction, or Order a New Trial,
     Because the Previously Unavailable New Evidence Taints the Integrity of the
     Proceedings and Would Lead a Juror to Find Reasonable Doubt .....................18

   A.   The New Evidence Would Lead a Jury to Find Reasonable Doubt...............19

   B.   The Court Should Grant a New Trial Because the New Evidence of
        Pervasive Errors in the FISA Application Process are Material and
        Taint the Integrity of the Proceedings...........................................................21

II.  This Court Should Grant the Petition Because Lack of the New Evidence
     Denied Petitioner's Constitutional Right to Put on a Complete Defense ..........21

   A.   The Court Should Grant a New Trial to Subject the FISA Application to
        Discovery and the Adversarial Process............................................................23

   B.   The Court Should Grant a New Trial so the New Evidence and FISA
        Search Can be Argued to a Jury.......................................................................23

III. In the Interests of Justice the Court Should Life Petitioner's Onerous
     Lifetime Probation Which Severely Hampers His Ability to Work and Live ..24

Conclusion ..................................................................................................24

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

# TABLE OF AUTHORITIES

**Cases** ...........................................................................................**Pages**

*California v. Trombetta*, 467 U.S. 479, 485 (1984) ...............................22

*Hall v. Dir. of Corr.,* 343 F.3d 976, 983-84 (9th Cir. Cal. September 8, 2003)......22

*House v. Bell*, 547 U.S. 518, 538 (2006) ...........................................19

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995).................................... 21, 22

*McCleskey v. Zant*, 499 U.S. 467, 495 (1991) .......................................19

*Schlup v. Delo*, 513 U.S. 298, 329 (1995) .........................................19

*Smith v. Cain*, 565 U.S. 73, 75-76 (2012)..............................................21


**Statutes**

50 U.S.C. § 1804 (a)(3)(A) .........................................................10


**Other Authorities**

Charlie Savage, *Problems in FBI Wiretap Applications Go Beyond Trump Aide Surveillance, Review Finds:  The Bureau has Routinely Botched Work on Surveillance Applications for its National Security Investigations, An Inspector General Said*, N.Y. TIMES (March 31, 2020) ....................................................2, 17

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

**Introduction**

All the evidence in this case is the fruit of a top-secret Foreign Intelligence Surveillance Act ("FISA") general search warrant, issued by the secretive, *ex parte* Foreign Intelligence Surveillance Court ("FISC"). But this is not a national security case, and Petitioner Keith Preston Gartenlaub has never been charged with a national security crime. Nor has the government produced any evidence to date, implicating Mr. Gartenlaub in any national security crime. But after what the government admitted on appeal was a general rummaging through Petitioner's computers, home, and life under the FISA Warrant, Petitioner was convicted for receipt and possession of child pornography. The District Court would afterward strike the receipt charge as multiplicitous. At every step of this proceeding Petitioner Gartenlaub has been denied access to any information about the FISA search, often after the courts have met *ex parte*, *in camera*, and off the record, with the government. This happened at both the District Court level, and at the Ninth Circuit.

The District Court, despite expressing misgivings about the FISA proceedings on the record, denied Gartenlaub's motion for a *Franks* hearing to challenge the probable cause behind the FISA search.[1] Nor did the Jury ever learn of the gaps in the evidentiary record left by the secret FISA search and the serious questions it posed. The court had ruled squarely on the side of the government when it came to the integrity of the secret search and evidence. It is an almost impossible task to defend against something you cannot examine but are required to trust. Particularly when the charges are as explosive as child pornography.

---

[1] (District Ct Tr. at 9-10 (4/18/16). ("I do have some personal questions regarding the propriety of the FISA court proceeding even though that certainly seems to be legally authorized.").

1

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

Throughout, the courts has presumed the integrity of the FISA Application and search.

But neither the courts, nor the Petitioner, were aware of the systemic, pervasive and serious errors and omissions in all 29 of the FBI's FISA applications recently reviewed by the Department of Justice's Inspector General (the "Inspector General") spanning from September 2019 through October 2014. In four of these cases the "Woods File," the file with the factual documentation supporting the application, was missing entirely.[2] This new evidence didn't emerge until March 30, 2020. That's when the Inspector General released a memorandum (the "IG Memo") documenting errors, omissions, and procedural failures in all 29 FBI FISA applications it reviewed spanning back through October 2014. As the New York Times reported upon its release, the IG Memo's "finding of systemic incompetence is devastating for the FBI."[3] Petitioner's FISA Application was granted by the FISC in January 2014, a mere seven months before the last case the Inspector General has reviewed to date.

The IG Memo followed a December 2019, 400 page "damning report" (the "IG Report"),[4] as the New York Times called it, of the serious errors

---

[2] Michael E. Horowitz, Management Advisory Memorandum for the Director of the FBI Regarding the Execution of Woods Procedures or Applications Filed with the Foreign Intelligence Surveillance Court Relating to U.S. Persons, Office of the Inspector General, U.S. Department of Justice, p. 2-3 (March 30, 2020), available at https://oig.justice.gov/reports/2020/a20047.pdf (last accessed April 22, 2020) [hereinafter The 2020 IG Memo].

[3] Charlie Savage, *Problems in FBI Wiretap Applications Go Beyond Trump Aide Surveillance, Review Finds: The Bureau has Routinely Botched Work on Surveillance Applications for its National Security Investigations, An Inspector General Said*, N.Y. TIMES (March 31, 2020) (quo, https://www.nytimes.com/2020/03/31/us/politics/fbi-fisa-wiretap-trump.html?referringSource=articleShare; *see also* Charlie Savage, *We Just Got a Rare Look at National Security Surveillance. It was Ugly*, N.Y. TIMES (Dec. 11, 2019), https://www.nytimes.com/2019/12/11/us/politics/fisa-surveillance-fbi.html.

[4] Office of the Inspector General, U.S. Department of Justice, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*, at viii (as updated Dec. 20,

2

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

and omissions in the FBI FISA applications targeting former presidential campaign adviser Carter Page.[5] Troubled by the seriousness of the pervasive errors and omissions documented in the IG Report, the Inspector General undertook a limited review of prior FBI FISA applications and, as documented in the IG Memo, found errors and omissions in every case he looked at.

Our society trusts the awesome power of depriving citizens of their liberty only to the government. Fundamental to this trust is that the government conduct its prosecutions with integrity, credibility, and reliability. And nowhere is this more important than when the government executes unreviewable top-secret national security searches. Our national security is supposed to protect our liberty, not take it away.

Throughout this process, whether on pretrial release, supervised release before reporting for his sentence, serving his sentence, and to date, Petitioner Keith Gartenlaub has a clean record. Indeed, the only thing on his record is this conviction.[6] He's never been accused of any inappropriate contact with children. The computer files in question here date back to 2005, and the evidence at trial is consistent with the files never having been opened.[7] But despite his good behavior and having served his prison sentence without event, he now lives under the onerous conditions of a lifetime probation that severely circumscribes where he can live and work.[8] The IG Memo and Report call into question the integrity of the government's case and raise disturbing and fundamental constitutional questions about the validity of the FBI's error laden FISA application practice and procedure.

---

2019), available at https://oig.justice.gov/reports/2019/o20012.pdf (last accessed April 19, 2020) [hereinafter The 2019 IG Report].
[5] *Id.*
[6] (Decl. of K. Gartenlaub, at ¶ 7 (Ex. A).
[7] (Decl. of J. Fischbach, at P. 3 Lns. 16-17 (Ex. B).
[8] (Decl. of K. Gartenlaub, at ¶ 8 (Ex. A).

3

Given that fact, and for the reasons argued below, this Court should vacate Petitioner's conviction. In the alternative, it should order a new trial and lift the onerous conditions of his lifetime probation.

**First**, the "systemic incompetence" documented in the IG Memo listing errors and omissions in every FISA Application, reviewed so far, is new evidence, unavailable until this point. That evidence would have been material to the District and Appellate Courts' review of this matter, as well as, material to the jury's determination of reasonable doubt. The lack of this evidence, which was impossible for the Defense to discover because the IG Memo and Report didn't come out until last month, prejudiced Gartenlaub. The IG Memo and Report directly questions the integrity and credibility of the government's case, and raises far more than the likelihood of a different outcome if both judge and jury were aware of the systemic nature of the errors and omissions in the FISA application process.

**Second**, the lack of this new evidence of systemic errors and omissions, combined with the District Court's denying the Defense any access to the FISA Application, and any related evidence, was a denial of Gartenlaub's constitutional right to put on a complete defense. Knowledge of the systemic, pervasive errors and omissions in the FBI's FISA application process would have led the defense to aggressively challenge the FISA Application, search, and lack of any forensic record from the government on this point. As affirmed in the attached declarations, the Defense would have put on its computer expert to challenge the procedural and evidentiary black hole that is the period of the FISA search in this case. And the Defense would have aggressively argued reasonable doubt based of the vagaries of

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

the FISA search to the jury and the fact there is no way to prove evidence wasn't altered.

For these reasons, and as detailed below, this Court should vacate Gartenlaub's conviction. In the alternative, it should grant a new trial so that the government's FISA Application, search, and computer evidence can be properly challenged in adversarial, and not error laden *ex parte*, proceedings; or this Court should eliminate or modify the terms of his unjust probation.

### Procedural History

On September 6, 2016, after a jury trial, the Federal District Court for the Central District of California entered judgment against Petitioner Keith Preston Gartenlaub.[9] The court entered judgment against Gartenlaub for one count of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), possession of child pornography.[10] On October 2, 2018, in an unpublished five-page decision, the United States Court of Appeals for the Ninth Circuit affirmed the District Court's judgment.[11] On December 7, 2018, the United States Court of Appeals for the Ninth Circuit denied Mr. Gartenlaub's petition for rehearing *en banc.*[12] On April 22, 2019 the United States Supreme Court denied a petition for a writ of certiorari.[13]

### Background

---

[9] (District Ct. Dkt. No. 216 (*United States v. Keith Preston Gartenlaub*, 14-CR-00173-CAS (C.D. Cal. 2016).)

[10] *Id.*

[11] App. at 16a-17a; (*United States v. Keith Gartenlaub*, No. 16-50339 (9th Cir. 2018), (Appeal Dkt. No. 96.).)

[12] *Id.*

[13] United States Supreme Court Docket, *Keith Preston Gartenlaub* v. *United States,*No. 18-201 (April 22, 2019), available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/18-1201.html.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

In 2013, Wesley Harris, an FBI agent in Los Angeles, read an article on Wired.com.[14] The article speculated that a spy at the Boeing Company, the designer and manufacturer of the U.S. Military's C-17 cargo plane, may have leaked the C-17's blueprints to the Chinese.[15] It suggested that the Chinese Military's Y-20 cargo plane was based on the stolen C-17 blueprints. After reading a second article speculating that "hackers" may have compromised the Boeing C-17 program, Agent Harris launched an investigation.[16] For reasons never revealed, the investigation targeted Petitioner Keith Preston Gartenlaub, a U.S. citizen, who at the time was an Engineering IT Manager at Boeing in Long Beach, California. No evidence exists, then or now, that Gartenlaub provided C-17 designs to China. He has never been charged with any national security crimes.

In July 2016, Chinese Citizen Su Bin was sentenced for his role in plotting to steal the C-17 military cargo plane designs.[17]

Agent Harris's investigation latched onto two principal facts:  that Gartenlaub's position at Boeing allegedly gave him access to C-17 data; and,

---

[14] (ER 378.) The following abbreviations refer to appellate filings in *United States v. Keith Preston Gartenlaub*, No. 16-50339 (9th Cir.):  "ER" refers to Excerpts from the Record (9th Cir. Dkt. No. 32); "AOB" refers to Appellant's Opening Brief (*Id*. at 31); "GB" refers to the Government's Opposition Brief (*Id*. at 53); "ARB" refers to the Appellant's Reply Brief (*Id*. at 63); "BAC" refers to Brief of Amici Curiae Electronic Frontier Foundation and American Civil Liberties Union in Support of Defendant- Appellant And Reversal (*Id*. at 34). All record cites are in parenthesis.

[15] (ER 379.) A previous version of the Wired.com article, published in December 2012, identified the potential Boeing spy as Dongfan Chung.  https://www.wired.com/2012/12/china-debuts-giant-transport/.  Chung was convicted in 2010 of providing Boeing trade secrets to China (although the conviction did not involve the C-17), and the Ninth Circuit affirmed in 2011. *See U.S. v. Chung*, 659 F.3d 815 (9th Cir. 2011).

[16] (ER 378; AOB at 5.)

[17] *See, e.g.*, Matt Hamilton, *Chinese Citizen is Sentenced to Prison in the U.S. for Plotting to Steal Military Secrets*, L.A. TIMES (July 13, 2016), http://www.latimes.com/local/lanow/la-me-ln-chinese-boeing-hack-prison-sentencing-20160713-snap-story.html.

6

that Gartenlaub's wife, a naturalized U.S. citizen, was born in China. Understandably, Gartenlaub travelled to China and communicated with his family there. He also jointly owned property in China with his wife. Gartenlaub hid none of this. Petitioner's wife has never been charged with any espionage related crimes, nor has any evidence ever been produced linking her to espionage.

Gartenlaub disclosed his Chinese travel to Boeing and received its approval. And Agent Harris knew this. He knew that Gartenlaub's communications with China had nothing to do with the C-17 and were explained by his family there. He knew that numerous employees could access Boeings C-17 data. Nonetheless, Agent Harris used Gartenlaub's alleged access, which Harris misunderstood and exaggerated, his Chinese-born wife, and other innocuous facts to get a FISA warrant.

In his affidavit Agent Harris falsely stated that Gartenlaub was the only employee at Boeing with "the combination of access to the C-17 data, knowledge of the computer network and systems, suspicious behavior and concerns by security personnel who worked with him, and connections and travel to China."[18] A simple investigation into Gartenlaub's career at Boeing reveals this isn't true. As the Washington Post reports, but apparently the FBI didn't check, Gartenlaub never had access to the Boeing C-17 data, and Boeing employees have expressed confusion as to why the FBI suspected Gartenlaub for stealing C-17 data he couldn't access.[19] Further, Agent Harris falsely identified Gartenlaub's position as

---

[18] (Harris Aff.) The Harris Affidavit is available from the District Court Docket, or the Excerpts from the Record on the Ninth Circuit docket.

[19] *See* Ellen Nakashima, *A former Boeing manager suspected of spying for China says that he, like Carter Page, was the victim of a flawed national security investigation*, WASH. POST. (Feb. 25, 2020), https://www.washingtonpost.com/national-security/a-former-boeing-manager-

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

"the nation-wide UNIX military administrator for Boeing" – a position which did not and never has existed.[20]

In January of 2014, the FISC approved the FBI's FISA search warrant. FISA requires that there be probable cause that an American citizen targeted for a search be an agent of a foreign power.[21] For the next three months the FBI secretly entered Petitioner's home, imaged his hard drives, searched whatever they wanted without limitation and wire tapped Petitioner. Despite their unfettered rummaging through every corner of Petitioner's life, they never have charged Petitioner with national security crimes or produced a shred of evidence implicating him in any. Instead, it took the fruits of its Top Secret FISA search and used it in a domestic criminal prosecution having nothing to do with national security.

Agent Harris's investigation was one of many launched at a time of intense pressure on the FBI and DOJ to take action against Chinese espionage targeting U.S. military and trade secrets. This pressure led to questionable investigations and prosecutions that have led to accusations of racism against Chinese Americans like Petitioner's wife. Regional DOJ offices used secret FISA search warrants to start several non-national

---

suspected-of-spying-for-china-says-that-he-like-carter-page-was-the-victim-of-a-flawed-national-security-investigation/2020/02/18/9371dd60-4dd3-11ea-9b5c-eac5b16dafaa_story.html

[20] (Harris Aff.); Ellen Nakashima, *A former Boeing manager suspected of spying for China says that he, like Carter Page, was the victim of a flawed national security investigation*, WASH. POST., Feb. 25, 2020.

[21] *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402-03 (2013) ("In FISA, Congress authorized judges of the Foreign Intelligence Surveillance Court (FISC) to approve electronic surveillance for foreign intelligence purposes if there is probable cause to believe that "the target of the electronic surveillance is a foreign power or an agent of a foreign power," and that each of the specific "facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power." §105(a)(3), 92 Stat. 1790").

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

security prosecutions for domestic crimes. Most, if not all, of these prosecutions collapsed for reasons including false evidentiary assumptions and accusations of racism against Chinese Americans.[22]

In November 2015, these accusations of DOJ racism against Chinese Americans led the U.S. Commission on Civil Rights to send a letter to U.S. Attorney General Loretta E. Lynch. The letter was asking for an investigation into the targeting of "Asian Americans for investigation, surveillance, and arrest, due to their race or national origin."[23] Eventually, the DOJ's main office in Washington, D.C. addressed these accusations of racially motivated national security investigations.

In 2016, the DOJ in Washington, D.C. issued new guidelines governing national security investigations under FISA. Judging by the IG Report and Memo, they are a failure. The guidelines require regional DOJ prosecutors to consult with national security prosecutors in Washington, D.C., before proceeding.[24]

But in 2013, these guidelines didn't exist. And, initially, Agent Harris didn't turn to FISA in his hunt for Chinese spies. In June 2013, Agent Harris applied, under Federal Rule of Criminal Procedure 41 ("Rule 41") in the Federal District Court for the Central District of California in Los Angeles, for a criminal search

[22] *See, e.g.*, Matt Apuzzo, *Former Espionage Suspect Sues, Accusing F.B.I. of Falsifying Evidence*, N.Y. TIMES (May 10, 2017), https://www.nytimes.com/2017/05/10/us/politics/fbi-xi-xiaoxing.html ("Each case raised the specter of Chinese espionage without explicitly charging the suspects as spies.").
[23] Martin R. Castro, et. al., *Letter from the United States Commission on Civil Rights to Loretta E. Lynch, United States Attorney General*, UNITED STATES COMMISSION ON CIVIL RIGHTS (Nov. 18, 2015), https://www.usccr.gov/press/archives/correspd/LettertoDOJreAsianAmericanProsecutions.pdf, (documenting dubious DOJ espionage investigations targeting Asian Americans).
[24] *See, e.g.*, Tim Cushing, *DOJ Issues New Rules On Espionage Investigations to Keep it From Embarrassing Itself So Often*, TECHDIRT (May 2, 2016), https://www.techdirt.com/articles/20160428/08364934298/doj-issues-new-rules-espionage-investigations-to-keep-it-embarrassing-itself-so-often.shtml.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

warrant targeting Gartenlaub's and his wife's emails for evidence of espionage.[25] The court approved the warrant. The subsequent search of the Gartenlaub's emails turned up no evidence of national security crimes, or any crimes whatsoever.

Undaunted, Agent Harris applied to the top secret, *ex parte* FISC for a secret search warrant under FISA.

In 1978, Congress passed FISA because, for decades, the FBI and CIA engaged in illegal domestic surveillance of, and action against, U.S. citizens. Congress intended FISA, and the FISC, to prevent abuses of power by federal law enforcement and intelligence agencies.[26] Thus, FISA limits searches targeting U.S. citizens to instances where there is probable cause that the citizen is an agent of a foreign power.[27] This holds true whether for targeted surveillance, or a targeted physical search.[28]

In January 2014, the FISC approved Agent Harris's secret warrant application, presumably for the surveillance of Gartenlaub and a physical search of his home, computers and hard drives.[29] The Defense has never had access to FISA Application, or been able to forensically examine, or

---

[25] (*See* AOB at 7.)

[26] The most infamous abuse being the FBI's COINTELPRO activities that politically targeted Americans like Martin Luther King, Jr. *See, e.g.*,  S. Rep. No. 94-755, Final Report of the Select Committee to Study Governmental Operations with Respect to Intelligence Activities, at 11 (April 26, 1976) ("[T]he Committee's investigation has uncovered a host of serious legal and constitutional issues relating to [domestic] intelligence activity and it is strong proof of the need for reform to note that scarcely any of those issues have been addressed in the courts."), available at https://upload.wikimedia.org/wikipedia/commons/7/79/Church_Committee_report_%28Book_I %2C_Foreign_and_Military_Intelligence%29.pdf.

[27] *See* 50 U.S.C. § 1804 (a)(3)(A).

[28] *Compare* 50 U.S.C. § 1804 (surveillance) *with* 50 U.S.C. § 1823 (physical searches).

[29] (*See* AOB at 7.)

10

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

otherwise subject to its independent analysis anything related to this FISA search. It's an evidentiary black hole for the Defense.

### The FBI Secretly Enters Gartenlaub's Home and Images His Hard Drives

On January 29 and 30 of 2014, FBI agents stealthily entered Gartenlaub's home to execute the secret FISA physical search warrant. Agents searched and digitally imaged three hard drives they found there. Over the following months, the FBI rummaged through every file they found on those hard drives. The Defense has never had access to any documentation of this unrestrained search and has seen no evidence that demonstrates that files on Gartenlaub's computers weren't altered in the process.[30]

In its Opposition Brief before the Ninth Circuit, the government acknowledges that there were no limitations to its secret search of Gartenlaub's hard drives, saying in a header:  "The Government Was Permitted to Search Every File on Defendant's Computers...."[31] And nothing in the record indicates that the government used any standard forensic techniques routinely used to particularize computer searches like:  date limitations; targeted key word searches; image recognition scans; taint teams, or other routine, well established techniques to limit a digital search to its target and screen privileged, confidential, and irrelevant information.

Despite its unlimited search, the FBI found no evidence that Gartenlaub had provided C-17 data to China, or otherwise acted as a spy for China. But the FBI did allegedly find, among the tens of thousands of files on the hard drives, a handful of files containing child pornography. Abandoning the false probable

---

[30] (Decl. of J. Fischbach, at P.3 Lns. 5-15, 22-24 (Ex. B).)
[31] (*See* GB at 52.)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

cause premise that Gartenlaub was a Chinese spy. The FBI then pivoted to a theory that he collected child pornography based on its unreviewable - for the Defense - secret search that has never been tested in the adversarial process. The process which is the foundation of the criminal justice system because of national security doctrines articulated nowhere in the Constitution.

### The Fed. R. Crim. P. 41 Warrants Based on the Fruits of the FISA Warrant

In August 2014, the FBI obtained a search warrant for Gartenlaub's premises seeking evidence that he received and possessed child pornography.[32] The August 2014 warrant application based its probable cause on the fruits of the secret FISA warrant executed in January 2014, describing it as "a court-authorized search without notice" to the occupants. Of course, the government was seeking to seize and search computers it had already seized and searched and had unrestrained access to under the FISA search warrant. The probable cause affidavit further stated that the search discovered child pornography on Gartenlaub's hard drives.[33] The District Court then granted the application for a normal Rule 41 search warrant.

With its August 2014 search warrant, the FBI search seized the three hard drives that it had already secretly imaged and searched for months under the FISA warrant. It also allegedly seized a fourth hard drive from Gartenlaub that contained a copy of the "Origdata" folder structure that allegedly contained the same files as the other three hard drives.

---

[32] (ER 243.)
[33] (ER 248-49.)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

On October 23, 2014, a grand jury indicted Gartenlaub for receipt and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5).[34]

Through pretrial motions, he:

1.     Challenged and sought suppression of the fruits of the January 2014 FISA search and the August 2014 searches of his home, computers, and hard drives, on Fourth Amendment and other grounds,

2.     Requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to establish that the FISA Application, and the August 2014 search warrant application contained intentional or reckless material falsehoods and omissions, and

3.     Sought disclosure of the underlying FISA Application and order.[35]

In response, the government submitted a largely classified, *ex parte* opposition to Gartenlaub's FISA challenges.[36] The defense received a heavily redacted version of the government's opposition. The District Court reviewed the FISA Application and order, together with the classified portions of the government's opposition, *in camera* and *ex parte*.

On August 6, 2015, in an 11-page opinion drafted by the government and signed unaltered by the District Court, the Court refused to disclose the FISA Application and order to the Defense, and denied Gartenlaub's motion to suppress the fruits of the FISA search.[37] Later, however, the court expressed misgivings, stating "I do have some personal questions regarding the propriety of the FISA court proceeding even though that certainly seems to be legally authorized."[38]

[34] (*See* ER 243, 248-49, 296-97; AOB at 7).
[35] (District Ct. Dkt. Nos. 67, 70, 73.)
[36] (District Ct. Dkt. No. 82.)
[37] (ER 21, 321.)
[38] (District Ct Tr. at 9-10 (4/18/16).)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

An enormous folder on Gartenlaub's drives with multiple subfolders called "Origdata" contained less than 100 child pornography files among thousands of other files. The exact number isn't clear. A review by the National Center for Missing and Exploited Children identified 22 files. An additional 70 or so alleged child pornography files were identified by non-expert agents.[39]

The evidence at trial showed that the files date to 2005, when numerous people had access to Gartenlaub's computer while he lived at a beach house.[40] No one knows who initially downloaded the files, or to what hard drive, or on to what computer.[41] No new files were added after 2005, nor is there any definitive evidence that any of these files were opened until the FBI opened them in 2014.[42] The child pornography files were copied, along with tens of thousands of other files in an enormous folder structure, to three other of Gartenlaub's hard drives. The files' presence on four hard drives is consistent with someone copying the entire contents of an old hard drive to a newly purchased hard drive. No evidence, such as log files, screen shots, cached data, or chat logs of Mr. Gartenlaub ever visiting any sites related to child pornography exists. Likewise, there's no evidence or testimony of any type that Gartenlaub groomed, solicited, or had sex with minors. There is no evidence of the type that one would expect to find related to someone who collects child pornography.

---

[39] (*See, e.g.*, District Ct. Tr. at 72, 92-94 (12/4/15).)
[40] (*See* ARB at 1-8.); (District Ct. Tr. at 403-05, 412-16, 421-23 (12/9/15).)
[41] (*See* ARB at 1.); (ER 193-95, 217.)
[42] (*See* AOB at 8.); (ER 194-95, 199-200.); (*See generally* ER 193-230 (cross-examination of government computer forensic expert Bruce Pixley).)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

As the District Court stated at sentencing, this is a "one-of-a-kind" child pornography case.[43] The court noted the absence of evidence that Gartenlaub downloaded the child pornography files, the lack of evidence that the collection was ever added to from 2005 until the FBI seized it in 2014, and the lack of evidence he ever opened those files.[44] Given the troubling nature of the FISA proceedings in this case, it has attracted media scrutiny - as well it should, given that the issues here go directly to the public's faith in the integrity of our criminal justice system.[45] The recent IG Report and Memo serve to validate the public's concern on this point.

### Verdict

After the guilty verdict, the District Court dismissed the receipt count (Count 1) as multiplicitous.[46] On August 29, 2016, the court sentenced Gartenlaub to 41 months imprisonment and $3,430 in restitution.[47] The District Court, and the Ninth Circuit, denied Gartenlaub's motion for bail pending appeal.[48] On February 14, 2017, he self-surrendered into custody. After serving his prison sentence without event, he was released from custody. He currently is out of physical custody, but is subject to the terms of an onerous and unjust lifetime probation.[49]

---

[43] (District Ct. Tr. at 7 (8/29/16).)
[44] (District Ct. Tr. at 5-7 (8/29/16).)
[45] Ellen Nakashima, *A former Boeing manager suspected of spying for China says that he, like Carter Page, was the victim of a flawed national security investigation*, WASH. POST (Feb. 25, 2020); Ellen Nakashima, *How a federal spy case turned into a child pornography prosecution*, WASH. POST (Apr. 5, 2016), https://www.washingtonpost.com/world/national-security/how-national-security-powers-are-underpinning-some-ordinary-criminal-cases/2016/04/05/1a7685f4-fa36-11e5-80e4-c381214de1a3_story.html; Jeff Stein, *Keith Gartenlaub, Target in China Spy Probe, Appealing Porn Sentence*, NEWSWEEK (Oct. 3, 2016), https://www.newsweek.com/keith-gartenlaub-spy-china-appeal-505572.
[46] (District Ct. Dkt. No. 210.)
[47] (ER 1.)
[48] (District Ct. Dkt. No. 247.)
[49] (*See*, Decl. K. Gartenlaub, at ¶ 8-9. (Ex. A).)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

### The DOJ Inspector General FISA Application Investigation

On December 9, 2019, the Inspector General released its report on the FISA applications in presidential campaign aide Carter Page's case.[50] The report's 400 plus pages documented "significant inaccuracies and omissions" in the FBI's four FISA applications in that case.[51] Troubled by what he saw, the Inspector General began a limited audit of FISA applications from DOJ offices across the country, finding errors and omissions in all 29 reviewed, including four that were missing files containing the information justifying the application.[52]

The March 30, 2020 IG Memo documents before now unknown serious and pervasive errors and omissions in the FBI's top secret *ex parte* FISC search warrant application process.[53] The IG Memo covers the period of October 2014 to September 2019. (Petitioner's FISA Application is from January 2014). It says in relevant part that the IG is not confident the FBI is following their own protocols designed to protect U.S. citizens from surveillance by the FBI.[54] Of the 29 files they reviewed, the factual support part of the file (the "Woods Files") for 4 were missing and may have never been created. The Memo notes "errors or inadequately supported facts in all of the 25 applications [with Woods Files] reviewed," and that "FBI and NSD officials we interviewed indicated to us that there were no efforts by the FBI to use existing FBI and NSD oversight mechanisms to perform comprehensive, strategic assessments of the efficacy of the Woods Procedures or FISA

---

[50] The 2019 IG Report.
[51] *Id*. at viii.
[52] The 2020 IG Memo at p. 2-3.
[53] *Id*.
[54] *Id*.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

accuracy, to include identifying the need for enhancements to training and improvements in the process, or increased accountability measures."[55]

### Argument

The "damning" IG Report and Memo that document the "systematic incompetence," of the FBI's FISA search warrant application practice and procedure is hitherto inaccessible new material evidence concealed by the government. This concealed evidence taints the integrity, credibility, and reliability of all the proceedings and evidence in this case.[56] Given these revelations, the *ex parte*, *in camera* assertions of the government, whatever they may have been, concerning the integrity of its secret search, are unworthy of the presumption of credibility. The evidence of systemic and pervasive error is indispensable to any court's review of this case. These are material facts that should have been presented to the jury. Any reasonable juror would, more likely than not, conclude that there's reasonable doubt as to integrity, credibility, and reliability of the government's case. Particularly, when confronted with the government's pervasive and systemic errors in all the FISA applications reviewed to date, combined with the government's refusal to allow the Defense any access to its FISA Application and search. If the government wants to rebut this reasonable accusation of taint in this case, then it should produce the FISA Application and all related evidence to the Defense and subject it to testing in our adversarial system.

Moreover, the government's concealment of the serious systemic errors in the FISA application process - doubtless aggravated by the FISA application

---

[55] *Id.*

[56] Charlie Savage, *Problems in FBI Wiretap Applications Go Beyond Trump Aide Surveillance, Review Finds: The Bureau has Routinely Botched Work on Surveillance Applications for its National Security Investigations, An Inspector General Said*, N.Y. Times (March 31, 2020).

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

process's *ex parte* nature - are material to Gartenlaub's case and deprived Gartenlaub of his right to a complete defense.

The government's use of the fruits of a secret FISA search warrant to prosecute an unrelated domestic crime, as happened here, is a recipe for governmental abuse. In the 33 years between 1979 and 2012, the FISC denied only 11 secret FISA applications and granted the rest. The FISC has a 99.97% approval rating for warrant applications.[57] This is only beat by the 100% error rate discovered by the Inspector General's review of FISA applications to date. There is no reason for the public to trust the integrity of the FISA application and FISC review process. Nor is there any reason for the courts to extend such trust when unsubstantiated national security interests are used to cloak a domestic criminal prosecution in secrecy and *ex parte* proceedings.

## I. This Court Should Vacate Petitioner's Conviction, or Order a New Trial, Because the Previously Unavailable New Evidence Taints the Integrity of the Proceedings and Would Lead a Juror to Find Reasonable Doubt

Neither the District Court nor the Jury had the benefit of the IG's Report and Memo. The pattern of errors, omissions, and missing case files documented in the IG's Report and Memo evidence serious systemic and institutional practical and procedural flaws in every FISA application reviewed so far by the Inspector General. Reasonable Jurors when presented with this evidence alongside the fact that the government refuses to disclose anything about the FISA Application would find reasonable doubt. And the

---

[57] *See* Conor Clarke, *Is the Foreign Intelligence Surveillance Court Really a Rubber Stamp?* 66 STAN. L. REV. ONLINE 125, 125 (2014); *see also*, Fed'n Am. Scientists, Foreign Intelligence Surveillance Act, available at https://www.fas.org/irp/agency/doj/fisa (last visited Mar. 06, 2019) (collecting the Foreign Intelligence Surveillance Court's annual reports to Congress).)

18

District Court is likely to have ruled in favor of Petitioner's *Franks* motion, and other FISA related motions, given that the Court stated its misgivings about the FISA Application on the record, to say nothing of how knowledge of the IG Report and Memo would have affected the Defense's strategy.[58]

## A. The New Evidence Would Lead a Jury to Find Reasonable Doubt

The Court should vacate Petitioner's conviction because the new evidence would lead a jury to a finding of reasonable doubt. In order to overturn a conviction or grant a new trial based on new evidence it must be "more likely than not any reasonable juror would have reasonable doubt."[59] In *Schulp v. Deloi* the United States Supreme Court held that the standard for habeas corpus actual innocence on new evidence claims requires that "a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.""[60] Then the habeas court will consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."[61] All this is provided, however, that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence."[62]

There is no way that Petitioner could have discovered the systemic and pervasive errors the Inspector General found. Gartenlaub has never had access to

---

[58] (Decl. of K. Gartenlaub, (Ex. A)); (Decl. of J. Fischbach, (Ex. B).)
[59] *House v. Bell*, 547 U.S. 518, 538 (2006).
[60] *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *see also McQuiggin v. Perkins*, 569 U.S. 383 (2013).
[61] *House*, 547 U.S. at 538.
[62] *McQuiggin*, 569 U.S. at 396 (citing *McCleskey v. Zant*, 499 U.S. 467, 495 (1991)).

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

his FISA Application case file. What the IG Report and Memo indicate is that there's a high likelihood that Petitioner's FISA Application is tainted by the same lack of diligence and accuracy documented by the IG's Report or Memo. Implicit in the denial of Petitioner's access to his FISA Application and its underlying materials, as well as all the courts secret *ex parte* meetings with the government in this case, is that the FISA application process and search have integrity. The IG Memo and Report contradict this premise.

The new evidence contained in the IG Report and Memo not only call into question the District Court's denial of Petitioner's motion for a *Franks* hearing and the Defense any access to the FISA Application and related evidence, it goes directly to the integrity, credibility, and reliability of the government's witnesses and evidence at trial. Given that every FISA application examined by the Inspector General so far contain errors and omissions, including four that are missing their case files entirely, it's reasonable to expect that Petitioner's FISA Application, is tainted with errors and omissions. And again, if the government wishes to be trusted on this point then it should produce Petitioner's FISA Application and related evidence to the Defense for adversarial testing. Because the IG Report and Memo demonstrate that the government's representations as to the integrity of its FISA application practice and procedure can't be trusted. And in retrospect, what look like they could be isolated factual errors in Petitioner's case take on a different light in the context of the serious systemic problems the Inspector General documents.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

**B.    The Court Should Grant a New Trial Because the New Evidence of Pervasive Errors in the FISA Application Process are Material and Taint the Integrity of the Proceedings**

The District Court, had it been aware of the systemic errors documented in the IG Report and Memo, likely would have granted the Defense's *Franks* motion. The point of a *Franks* hearing is to test the validity of a government search warrant application, and it's reasonable to assume that a court presented with a list of systemic errors in other FISA applications would want to test the FISA application in front of them for the same errors. Likewise, if the jury learned of the serious pervasive errors in FISA applications it would put the government's refusal to produce it in a different light. It follows that "the likelihood of a different [trial] result is great enough to 'undermine [] confidence in the outcome of the trial.'"[63]

**II.    This Court Should Grant the Petition Because Lack of the New Evidence Denied Petitioner's Constitutional Right to Put on a Complete Defense**

Had the Defense known about the systemic errors and omissions documented in the IG's Report and Memo it would have materially impacted their case in two ways. First, as the declarations of Petitioner and Jeff Fischbach, the Defense's computer expert at trial, attest, both of them would have aggressively sought to have Mr. Fischbach testify not only to the government's faulty forensics, but on the fact that the FISA search is an evidentiary black hole to the Defense. Second, as both attached Declarations assert,[64] the Defense would have aggressively sought to place the issue of FISA in front of the jury. The fact that they were denied this evidence, through no lack of due diligence on their part,

---

[63] *Smith v. Cain*, 565 U.S. 73, 75-76 (2012) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).
[64] (Decl. of Fischbach, P. 2 Lns. 18-25 (Ex. B)); (Decl. of Gartenlaub, ¶¶ 2-3 (Ex. A).)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

constitutes a denial of Gartenlaub's right to put on a complete defense.[65] The test is not whether the new evidence necessitates a different verdict, but rather whether its lack deprived Petitioner of a fair trial.[66]

As Mr. Fischbach states in his declaration, had he known about the systematic and pervasive errors in the FISA application process he would have insisted on testifying. Fischbach sets out in his declaration how he would have noted any discrepancies between the two search warrants, would have insisted on putting the FISA search in front of the jury to make clear the second search was based on the fruits of the FISA search, and that there were anomalies in the government's evidence which could have been the result of FBI errors.[67] He further would have testified that the evidence was consistent with no one having ever opened the files after they were downloaded in 2005, and that in fact someone other than Gartenlaub downloaded them. This would certainly have raised reasonable doubt in the eyes of the jury when viewed together with the evidence that Gartenlaub did not share any of the normal markers of a child pornographer such as continuous collection of such materials – a fact that even the judge found remarkable.

---

[65] *See Su Chia v. Cambra,* 360 F.3d 997, 1003-04 (9th Cir. 2004);*California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also, United States v. Cronic,* 466 U.S. 648, 656 (1984); *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986).

[66] *See Hall v. Dir. of Corr.,* 343 F.3d 976, 983-84 (9th Cir. Cal. September 8, 2003) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."); *Kyles,* 514 U.S. at 434 (reversing and remanding where evidence, undisclosed by the state, was found to be "material," meaning that it was favorable to the defendant, and the absence of this evidence at trial undermined confidence in the outcome of the trial).

[67] (Decl. of Fischbach, P. 3 Lns. 1-4 (Ex. B).)

22

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

### A.   The Court Should Grant a New Trial to Subject the FISA Application to Discovery and the Adversarial Process

The facts surrounding the technology of copying and accessing files was complex and proved confusing for both the judge and the jury. The defendant's expert witness, has a great deal of experience testifying in child pornography cases and is highly credentialed.[68] At a new trial Mr. Fischbach would testify to the proper protocols for executing FISA searches and surveillance; that deficiencies in following proper protocols may have resulted in damaged or destroyed evidence; and that there was no evidence of who downloaded the files or that they had ever been viewed.[69] And any new trial would involve a *Franks* motion and a renewed demand to see the FISA Application and supporting materials at issue here.

### B.   The Court Should Grant a New Trial so the New Evidence and FISA Search Can be Argued to a Jury

The Jury in this case never learned of the FISA search that led to all the evidence in this case. The systemic errors documented by the IG Report and Memo go directly to the weight and credibility of the government's case because it proves the government's FISA application process is unreliable. Missing case files for top-secret, *ex parte* search warrants applications in matters where the government seeks to deprive someone of their liberty does not inspire confidence in the government's procedure. Combine that with the fact that the FISA search in this case is an evidentiary black hole for the Defense because the government refuses to let the Defense see it raises the possibility that the real reason the government is hiding the file is not national security interests but self-interests.

---

[68] (*Id.* at P. 1 Lns. 3-10.)
[69] (*Id.* at P. 3.)

23

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF 28 U.S.C. § 2255 HABEAS CORPUS PETITION

### III.   In the Interests of Justice the Court Should Life Petitioner's Onerous Lifetime Probation Which Severely Hampers His Ability to Work and Live

Mr. Gartenlaub has served his time but as things stand, his Kafkaesque experience will never end. For the rest of his life he will be on probation. He will have to remain on a sex offender registry. He will be prevented from living in certain locations and the government will track his movements and whereabouts.

If this court cannot bring itself to overturn this conviction or grant a new trial, we ask that this court in the interest of justice, vacate Gartenlaub's lifetime probation so he may move on.

### Conclusion

The Department of Justice's Inspector General's Report and Memo documenting systemic incompetence, errors, and omissions - including missing case files for FISA applications - taint the integrity of the proceedings in this case and corrode the public's trust in our criminal justice system. The Court should vacate Mr. Gartenlaub's conviction, or in the alternative, grant a new trial or vacate his lifetime probation.

DATED:  April 22, 2020                    **TOR EKELAND LAW, PLLC**

By: */s/ Mark Jaffe*

Mark Jaffe
Tor Ekeland (NYS Bar No. TE5608)

*Pro Bono Attorneys for Petitioner*

---

24