TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
GABE PODESTA (Cal. Bar No. 324011)
Assistant United States Attorney
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2429
     Facsimile: (213) 894-0141
     E-mail:    gabriel.podesta@usdoj.gov

Attorneys for Plaintiff/Respondent
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Nos. CV 20-03711-CAS |
| --- | --- |
| Plaintiff/Respondent, | SA CR 14-00173-CAS |
| v. | GOVERNMENT'S REPLY IN SUPPORT OF EX PARTE APPLICATION FOR EXTENSION OF TIME TO FILE ITS OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE |
| KEITH PRESTON GARTENLAUB, | |
| Defendant/Petitioner. | |

Plaintiff/Respondent United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Gabe Podesta, hereby files its reply in support of its ex parte application for a court order granting a 180-day extension of time, to July 26, 2021, for the government to file its opposition to the motion to vacate, set aside, or correct sentence filed by Defendant/Petitioner KEITH PRESTON GARTENLAUB.

//

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 4, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

         /s/
GABE PODESTA
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Petitioner KEITH PRESTON GARTENLAUB filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). (CV Dkt. No. 1; CR Dkt. No. 254[1]). The Petition sensationally assails the entire Federal Bureau of Investigation and Department of Justice based on public disclosures pertaining to unrelated cases and investigations. Specifically, petitioner alleges that recent findings by the Department of Justice Office of the Inspector General ("OIG") suggest a "high likelihood" of a lack of diligence and accuracy on the part of the government in the investigation giving rise to petitioner's conviction and sentence for possession of prepubescent child pornography. (Petition at 20.)

Prior to trial, this Court independently reviewed the Foreign Intelligence Surveillance Act ("FISA") search application employed in the investigation and denied petitioner's claims of material error or omission in their entirety. After petitioner's conviction, the Ninth Circuit conducted its own review on direct appeal and reached the same conclusion. The Petition thus seeks to relitigate claims previously adjudicated through a supplementation of the record with evidence pertaining to unrelated and extraneous matters.

Recognizing that OIG had not reviewed the FISA search application employed in this investigation, petitioner demanded that OIG do so. Based on petitioner's own demand, OIG is presently reviewing petitioner's allegations. In stark contrast to other OIG

---

[1] Docket citations to Gartenlaub v. United States, Case No. CV 20-03711-CAS are denoted by "CV." Docket citations to the underlying criminal case United States v. Gartenlaub, Case No. SA CR 14-00173-CAS are denoted by "CR."

findings, OIG's review of petitioner's allegations may inform the matter presented to this Court – whether new evidence calls into question findings of probable cause made by the Foreign Intelligence Surveillance Court ("FISC"), this Court, and the Ninth Circuit.

Because the OIG review petitioner demanded bears on the matter presented to this Court, OIG should complete its work before the government responds. Petitioner, who was released from custody over two years ago, will suffer no cognizable injury while OIG undertakes the review petitioner compelled. This Court should adjudicate the issues on a complete record and reject the piecemeal approach petitioner proposes in his opposition to the government's ex parte application.

**II. FACTUAL BACKGROUND**

**A. Procedural Background**

Prior to trial, petitioner moved to suppress any information obtained or derived from FISA searches or surveillance (i.e., "FISA information"). (CR Dkt. No. 70.) So doing, petitioner argued that any government application to the FISC failed to establish probable cause and included reckless or intentional material falsehoods requiring an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). (Id. at 2-3, 17-19.) Petitioner likewise argued that FISA materials should be disclosed, inter alia, because they may include information subject to Brady v. Maryland, 373 U.S. 83 (1963), and were necessary to his defense under the Sixth Amendment. (Id. at 2, 25-27.)

The government opposed. (CR Dkt. No. 82.) In addition to filing an unclassified opposition available to petitioner and his counsel, the government submitted a classified, sealed appendix in

2

1  camera and ex parte, as well as a classified version of an opposition
2  brief.  (See generally CR Dkt. No. 80.)
3       As required by FISA, the Court conducted an in camera, ex parte
4  review of classified materials submitted by the government.  (CR Dkt.
5  No. 114; accord 8/29/16 RT, CR Dkt. No. 241, at 21-22 (the Court
6  "spent a long time looking at all the stuff" submitted by the
7  government).)  The Court denied petitioner's motion, "firmly
8  convinced" that the government complied with the law.  (8/29/16 RT at
9  21-22.)  At a separate hearing on petitioner's pretrial motions, the
10 Court confirmed it had "reviewed the documents with great care" and
11 stated it "believe[d] the government has complied with the rules in
12 making FISA applications."  (8/6/15 RT, CR Dkt. No. 232, at 3-4.)
13      On appeal, petitioner renewed his claims that the FISA
14 information must be disclosed, that a Franks hearing was necessary,
15 and that the results of the searches authorized by the FISC must be
16 suppressed.  (See generally Appellant's Opening Brief, Ninth Circuit
17 Case No. 16-50339, Dkt. No. 31.)  Petitioner again speculated that
18 the government's application to the FISC contained material
19 misstatements or omissions and failed to satisfy FISA's probable
20 cause standard.  (Id. at 23-28.)  Petitioner also argued that
21 disclosure of the FISA information was required due to problems with
22 entirely unrelated FISA applications and orders.  (Id. at 51.)
23 Petitioner cited In re All Matters Submitted to the Foreign
24 Intelligence Surveillance Court, 218 F. Supp. 2d 611, 620 (FISA Ct.
25 2002), abrogated by In re Sealed Case, 310 F.3d 717 (FISA Ct. Rev.
26 2002), In re Application of the FBI for an Order Requiring the
27 Production of Tangible Things from [redacted], Case No. BR 09-13,
28 2009 WL 9150896 (FISA Ct. Sep. 25, 2009), and [redacted], 2011 WL

10945618 (FISA Ct. Oct. 3, 2011), to suggest that disclosure of FISA information and "adversarial proceedings" would be necessary for the district court to detect erroneous statements and omissions of material facts in the FISA application. (Id. at 51-52.) Finally, petitioner cited statistics published by the Department of Justice to intimate that the FISC serves as a rubber stamp for government applications. (Id. at 52 ("year in and year out, the FISC approves without modification the overwhelming majority of the FISA applications the government presents and rejects only a tiny handful").)

The government answered the appeal and, as it did in opposing petitioner's pre-trial motions, submitted classified record evidence. See United States v. Gartenlaub, 751 Fed. App'x 998, 1000 (9th Cir. 2018). The panel conducted an "independent review" of the classified evidence and "conclude[d] that the FISA warrant was supported by probable cause." Id. Specifically, "[t]he FISA application and supporting materials demonstrated probable cause to believe that [petitioner] was an agent of a foreign power when the FISA order was issued." Id. (citing 50 U.S.C. §§ 1801(b), 1821(1), 1824(a)(2)). Acknowledging a circuit split in what level of deference must be given to the district court's order, the panel held that the standard of review made no difference in this matter because it was "convinced probable cause existed under either a de novo or an abuse of discretion standard of review." Id. at 1000 n.4.

The panel similarly dispatched the claim that the Court erred in denying petitioner's motion for disclosure of the FISA information. The panel "conclude[d] that the disclosure of the FISA materials to [petitioner] was not 'necessary to make an accurate determination of

4

the legality of the search.'"  Id. at 1001 (citing 50 U.S.C. § 1825(g) and United States v. Ott, 827 F.2d 473, 476–77 (9th Cir. 1987)).  The panel's "in camera review of the underlying FISA materials" revealed "no indications of possible misrepresentation of fact, vague identification of the persons to be surveilled, or surveillance records which include a significant amount of non-foreign intelligence information, or any other factors that would indicate a need for disclosure." Id. (citing Ott, 827 F.2d at 476–77).  Emphasizing that its conclusion was not a close call, the panel held that "disclosure was not necessary even under a less rigorous standard than that proposed by the government."  Id.  Finally, the panel considered petitioner's "due process [and] Brady rights" and found no violation of either by protecting the FISA information from disclosure.  Id.

**B. The OIG's Investigation of the Unrelated Crossfire Hurricane Investigation and Audit of FISA Applications**

Years after petitioner's conviction, OIG examined an unrelated FBI investigation opened on July 31, 2016, known as "Crossfire Hurricane."  (See OIG, "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation," updated December 20, 2019, (hereinafter "OIG Report") at i, available at: https://www.justice.gov/storage/120919-examination.pdf (last visited: February 4, 2021.)  The Crossfire Hurricane investigation examined whether individuals associated with the Donald J. Trump for President Campaign were coordinating, wittingly or unwittingly, with the Russian government's efforts to interfere in the 2016 U.S. presidential election.  (Id.)

In the course of its review, OIG concluded that the FBI had sufficient factual basis and authorized purpose to open the Crossfire Hurricane investigation. (Id. at 347.) The OIG also reviewed four applications submitted to the FISC seeking authority to conduct electronic surveillance of Trump campaign associate Carter Page. (Id. at 121.) These four applications consisted of an initial application, submitted in October 2016, and three renewal applications, submitted in January 2017, April 2017, and June 2017. (Id. at 156, 197, 210, and 219.)

OIG found errors in the preparation of these applications. (Id. at 229-267.) Among other things, OIG determined that the FBI personnel responsible for preparing these applications had not rigorously adhered to the FBI's Woods Procedures. (Id.) The Woods Procedures require that the case agent maintain a "Woods File," separate from the FBI's investigative case file, containing supporting documentation for every factual assertion contained in a FISA application. (Id. at 43.)

After preparing the OIG Report, OIG continued its work with an audit of the Woods Procedures associated with other applications submitted to FISC. (See OIG, "Management Advisory Memorandum for the Director of the Federal Bureau of Investigation Regarding the Execution of Woods Procedures for Applications Filed with the Foreign Intelligence Surveillance Court Relating to U.S. Persons," March 30, 2020 (hereinafter "OIG Memo"), at 1, available at: https://oig.justice.gov/sites/default/files/reports/a20047.pdf (last visited: February 4, 2021.) On March 30, 2020, OIG issued the OIG Memo detailing preliminary findings of its audit. (Id.) OIG audited compliance with the Woods Procedures for 29 FISA applications from

October 2014 to November 2019,[2] and found deficiencies in each.  (Id. at 2-3.)  OIG specifically cautioned, however, that the audit findings reported in the OIG Memo did not concern the merits of the FISA applications:

> we have not made judgments about whether the errors or concerns we identified were material.  Also, we do not speculate as to whether the potential errors would have influenced the decision to file the application or the FISC's decision to approve the FISA application.  In addition, our review was limited to assessing the FBI's execution of its Woods Procedures, which are not focused on affirming the completeness of the information in FISA applications.

(Id. at 3.)  Critically, OIG did not examine the FBI's investigative case files to ascertain the accuracy of the facts represented in the applications submitted to the FISC.  (Id. at 8 ("we did not review case files or other documentation to confirm FISA application accuracy or identify any relevant omissions.").)

In response to the OIG Memo, the FISC ordered the government to identify the 29 applications audited by OIG.  See In re Accuracy Concerns Regarding FBI Matters Submitted to the FISC, Docket No. Misc. 19-02, 2020 WL 1975053, at *1 (FISA Ct. Apr 3, 2020).  The FISC also described its need to "monitor the ongoing efforts of the FBI and DOJ to ensure that, going forward, FBI applications present accurate and complete facts.  When problems are identified in particular cases, furthermore, the Court must evaluate what remedial measures may be necessary."  Id.

On July 29, 2020, the government filed a supplemental response to the FISC's order, detailing its review of the 29 FISA applications

---

[2] As petitioner concedes, the FISA searches at issue in this case were conducted in January 2014.  (Petition at 2.)  Accordingly, the OIG's audit did not include the FISA application at issue here.

7

1  audited by OIG.  (See generally Supplemental Response to the Court's
2  Order Dated April 3, 2020 (hereinafter "DOJ Response"), In re
3  Accuracy Concerns Regarding FBI Matters Submitted to the FISC, Docket
4  No. Misc. 19-02, unclassified version available at:
5  https://www.justice.gov/nsd/page/file/1300701/download (last visited:
6  February 4, 2021).)  Unlike OIG, the government assessed the relevant
7  probable cause determination and the information established by the
8  supporting documentation – or the remaining facts supporting probable
9  cause in the absence of unsupported information – to determine if the
10 applications contained any material misstatements or omissions.  (Id.
11 at 11-12.)  After reviewing "hundreds of pages of statements of
12 fact," the government identified two material errors within the 29
13 FISA applications.³  (Id. at 5.)  The government further assessed
14 that "these two material errors did not invalidate the authorizations
15 granted by the Court in the applicable docket."  (Id.)  The
16 government also identified a total of 201 non-material errors
17 consisting of typographical or date errors, non-material factual
18 assertions that may be accurate, but for which a supporting document
19 could not be located in the FBI's files, and non-material deviations
20 between a source document and an application or a misidentified
21 source of information.  (Id. at 3-4, 5-6.)

> Because the FBI holds itself to the highest standard of
> exactness, the FBI will continue to emphasize the
> importance of rigor in the FISA process, as part of its
> ongoing effort to enhance accuracy and completeness.
> [. . . ] Nevertheless, given that the Government uncovered
> only two material errors amidst thousands of facts, and
> because those errors are not judged to have impacted
> probable cause, the FBI believes the results of the review

---

³ The declaration of Dana Browning, Acting FBI General Counsel, accompanying the DOJ Response states that these hundreds of pages of statement of fact contained a total of 6,771 factual assertions. (Browning Decl. ¶ 5, page 52 of 88 of the DOJ Response.)

8

|   |   |
|---|---|
| 1 |         prompted by the April 3 Order <u>should instill confidence in</u> |

        prompted by the April 3 Order <u>should instill confidence in the accuracy of material information</u> the FBI submits to the [FISC].

(<u>Id.</u> at 36 (emphasis added).)

    Public reporting regarding the DOJ Response noted that the OIG Report and OIG Memo led to sensational but undeserved criticisms of the FBI and the FISA application process more broadly. In one such article – cited by Petitioner – the author wrote, "FBI officials did not publicly describe the inspector general report as overwrought, but they suggested that the perceptions it fueled of an out-of-control secret spying apparatus were unwarranted." (See Gerstein, Josh, "DOJ, FBI review of surveillance applications finds almost all errors are minor," available at: https://www.politico.com/news/2020/08/03/doj-fbi-review-of-surveillance-applications-finds-almost-all-errors-are-minor-391101 (last visited: February 4, 2021).)

    **C.    Petitioner's Demand for OIG Review**

    Four months after he filed the Petition, petitioner filed a motion for leave to supplement it. (CV Dkt. No. 11.) In that filing, petitioner provided the Court correspondence between OIG and The Honorable Ted Lieu, United States Representative, and correspondence between OIG and petitioner. (See <u>id.</u>, Exs. C-F.). These materials document petitioner's demand that OIG review the FISA application submitted in this investigation. (See <u>id.</u>, Ex. D (June 15, 2020 letter from OIG to petitioner describing petitioner's request that the OIG "investigate a Foreign Intelligence Surveillance Act application the government filed as part of its investigation into the theft of material on Boeing's C-17 military transport plane"), Ex. F (August 4, 2020 letter from OIG Oversight and Review

9

Division to petitioner's counsel referencing "the allegations [he] presented").)

OIG acceded to petitioner's demand and is presently reviewing his allegations. As of January 19, 2021, OIG anticipates that it will take at least six months to complete its review. (See Ex Parte Application, CV Dkt. No. 26, at 2.)

**III. ARGUMENT**

    **A. The Court Should Permit OIG to Finish its Review of Petitioner's Allegations and Thereby Decide Petitioner's Claim on Complete Information**

The FISA application at issue here was independently examined by the FISC, this Court, and then Ninth Circuit. See CR Dkt. No. 114; Gartenlaub, 751 Fed. App'x at 1000. Each found probable cause and, in addition, this Court and the Ninth Circuit rejected petitioner's contention that the application contained material misstatements or omissions. See CR Dkt. No. 114; Gartenlaub, 751 Fed. App'x at 1000.

Petitioner now contends that this Court should vacate his sentence and order a new trial based on OIG findings concerning unrelated investigations. The Crossfire Hurricane investigation giving rise to the OIG Report was launched by the FBI on July 31, 2016, years after petitioner was charged and convicted in this matter. (See OIG Report at i.) Furthermore, the Woods Procedures audit described in the OIG Memo examined FISA applications filed between October 2014 to November 2019. (OIG Memo at 2-3.) While the targets of those FISA applications have not been publicly disclosed, petitioner concedes that the OIG audit did not include the application at issue here. (See Petition at 2.)

Petitioner – not the government – thereafter demanded that OIG review the FISA application submitted in this investigation. OIG has begun, but has not completed, that review.

Petitioner previously argued that in evaluating the Petition the Court should consider the fact that petitioner and others sought this OIG review of the FISA application "at the heart" of petitioner's claims. (See CV Dkt. 11 at 2.) Now, however, petitioner contends that the Court's consideration of the OIG review of the FISA application submitted in this case is unnecessary because the OIG Report and OIG Memo "establish[] a violation of [petitioner's] Sixth Amendment right to adversarial process and his Fifth Amendment Due Process right to put on a complete defense." (CV Dkt. No. 27 at 7.)[4]

Setting aside the extraordinary proposition that petitioner has standing to assert Constitutional violations based on government conduct in unrelated investigations, petitioner offers no plausible justification to simply ignore OIG's review of the FISA application at issue here. That review – demanded by petitioner and the only one that would directly relate to the issues "at the heart" of his own motion – should be complete before the government responds or the Court adjudicates the merits of the Petition.

**B. Petitioner Demands the Court Adjudicate the Petition on an Incomplete Record – and Invites Further Litigation**

Petitioner's opposition to the government's ex parte application sets forth precisely the folly in adjudicating the matter now.

---

[4] Petitioner does not mention that the government's review of "hundreds of pages of statements of fact," identified only two material errors within the FISA applications described in the OIG Memo and that "these two material errors did not invalidate the authorizations granted by the Court in the applicable docket." (DOJ Response at 5.)

11

Petitioner writes "[s]hould the OIG eventually find evidence of errors in [the instant FISA application,] that will constitute another independent basis under for vacating his conviction or ordering a new trial if necessary." (CV Dkt. No. 27 at 6.) In other words, petitioner proposes that the government respond and the Court adjudicate the issue on an incomplete record now and then, should the government prevail, petitioner will simply relitigate the FISA application yet again.[5] The Court should not sanction such a piecemeal approach. Rather, the Court should evaluate the Petition based on a complete factual record, including the OIG review that petitioner demanded.

**C. Despite Petitioner's Assertions to the Contrary, the Government Diligently Addressed the Petition**

Much of petitioner's opposition assails the government for its alleged dilatory response to the Petition. Much like his description of the government as "racist" and "corrupt[]" (CV Dkt. No. 27 at 3), petitioner's language may be inflammatory, but ultimately it fails.

Petitioner filed the petition on April 22, 2020. (CV Dkt. No. 1.) At that time, petitioner's counsel failed to file the requisite application to appear <u>pro hac vice</u>. (CV Dkt. No. 4.) Petitioner's counsel filed a deficient application on April 30, 2020 (CV Dkt. No. 7), and then did not attempt to cure the deficiency until the Honorable Otis D. Wright, United States District Judge, again ordered petitioner's counsel to do so on August 24, 2020. (CV Dkt. No. 10.) Accordingly, four months of the supposed "government delay" is

---

[5] In this scenario, the parties would first litigate whether petitioner met 28 U.S.C. § 2255(h)'s standard for filing a second or successive petition, yet another issue the parties would have to separately brief and the Court decide.

12

1 attributable to petitioner's failure to comply with the Court's Local
2 Rules governing pro hac vice applications.
3 　　　The government's trial counsel in this case, Assistant United
4 States Attorneys Anthony Lewis and Vicki Chou, each left the United
5 States Attorney's Office ("USAO") years before petitioner filed the
6 Petition. Electronic notice of the filing of the Petition was thus
7 provided by the Court's electronic docketing system to deactivated
8 and unmonitored email accounts.
9 　　　On November 20, 2020, petitioner filed a motion for default
10 judgment. (CV Dkt. No. 18.) That motion resulted in a transfer of
11 the Petition to this Court, where it belonged under the Local Rules
12 since April 22, 2020, the time it was filed. (CV Dkt. No. 21.) The
13 motion for default judgment also served to bring the Petition to the
14 attention of attorneys within the USAO for the first time. An
15 Assistant United States Attorney appeared on November 23, 2020 (CV
16 Dkt. No. 20), and, on Thanksgiving Day 2020, that attorney filed a
17 stipulated briefing schedule (CV Dkt. No. 23).
18 　　　The matter was thereafter reassigned to another Assistant United
19 States Attorney (CV Dkt. No. 25) and the government thereafter
20 undertook a complete review of the Petition and the materials
21 submitted in support thereof. On January 19, 2021, after confirming
22 that OIG's review of petitioner's allegations remained ongoing and
23 would not be complete before the government's filing deadline, the
24 government sought petitioner's position on the instant ex parte
25 application and thereafter filed it. (CV Dkt. No. 26.)
26 　　　The government diligently pursued this matter once it was
27 brought to the attention of attorneys within the USAO. Much like
28 petitioner ascribes sinister and ulterior motives to the FBI,

petitioner falsely contends that the government is "avoiding" the Petition. (CV Dkt. No. 27 at 9.) Nothing is further from the truth. The government welcomes the opportunity to respond – based on a complete factual record – and finally dispatch petitioner's retread and relitigated claims.

## IV. CONCLUSION

For the forgoing reasons, the government respectfully requests that the Court grant the government's ex parte application for a 180-day extension of time, to July 26, 2021, to file its opposition to the motion to vacate, set aside, or correct sentence filed by petitioner.

14